tion of a rivalry in business in a manner which never would have been possible but for the agreement to connect their lines. Indeed, under the conditions presented, it would seem to be incompatible with the agency which each assumed toward the other for the transmission of messages that the agent should establish competing lines and seek customers in the same territory in which the other receives its patronage. The tendency would be not to perform the duties of the agency with as great fidelity if the agent had a selfish end to attain in the undermining of the business of its principal. The covenant not to become a competitor in the field already occupied by the other would seem, therefore, to be a reasonable corollary to the creation of this reciprocal agency, and quite essential to its complete and successful fulfillment.

I am not unmindful that the courts must look with keen scrutiny into contracts between corporations holding franchises from the public, exercising the power of eminent domain, and rendering service upon which the public necessarily depends, which tend in any degree to deprive the public of the benefits of competition; but contracts between public service corporations, which involve incidentally a partial restraint in competition, are not obnoxious to public policy, if the main object of the agreement is lawful and beneficial to the public, and the restraint upon competition imposed is only a minor incident and fairly necessary for the accomplishment of the principal object to be attained. Chicago R. R. Co. v. Pullman Car Co., 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97. Common carriers are not deprived of the benefit of such contracts. Oregon Steam Navigation Co. v. Winsor, 87 U. S. 64, 22 L. Ed. 315; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456.

The Empire State Company succeeds only to the rights and liabilities of the Ontario Company under the contract. If the contract was good between the parties who entered into it, it cannot become wholly void by the purchase of the lines and properties of one of the parties by a third telephone company, whose more extended field of operation may make the third company an actual rival of the remaining original party to the agreement. Accordingly it is held, in conformity to the views expressed, that the complaint states a cause of action.

The demurrers must therefore be overruled.

---

(128 App. Div. 54.)

In re MOHAWK RIVER BRIDGE CONNECTING TOWNS OF ROTTERDAM AND GLENVILLE.

(Supreme Court, Appellate Division, Third Department. September 17, 1908.)

1. EVIDENCE—JUDICIAL NOTICE.

    The court will take judicial notice that by Laws 1903, p. 334, c. 147, § 3, as amended by Laws 1905, p. 2102, c. 740, § 1, the Mohawk river, between designated points, is to be a part of the Erie Canal, and that the river between such points is "canalized" for the barge canal.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 36–48.]

2. CANALS—BRIDGES—CONSTRUCTION—PERMISSION BY STATE.
    Canal Law (Laws 1894, pp. 645, 646, c. 338) §§ 115, 117, providing that a bridge shall not be constructed across any canal without first obtaining for the model thereof the consent of the superintendent of public works, etc., and providing that a town may, with the consent and under the direction of the superintendent of public works, erect and maintain a bridge of such kind, dimensions, and material as the superintendent may approve, give consent to the construction of bridges across the Erie Canal.

. 3. EVIDENCE—JUDICIAL NOTICE.
    The court will take judicial notice of the fact that the canal authorized by Laws 1903, p. 334, c. 147, § 3, as amended by Laws 1905, p. 2102, c. 740, § 1, is being constructed.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 70.]

4. CANALS—BRIDGES—CONSTRUCTION.
    Where it is not known at what particular point between towns the Erie Canal will pass, or what kind of a bridge or in what manner the bridge shall cross a river when canalized for the Erie Canal, no order for the construction of a bridge across it will be made.
    Smith, P. J., dissenting.

Appeal from Special Term, Schenectady County.

In the matter of the application for the construction of a bridge across the Mohawk river connecting highways in the towns of Rotterdam and Glenville, Schenectady county. From an order appointing a referee to ascertain and report in relation to the construction of the bridge, the highway commissioners of the towns of Rotterdam and Glenville appeal. Reversed, and application denied.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

W. W. Wemple (Alonzo P. Strong, of counsel), for appellants.
Henry V. Borst, for respondent.

JOHN M. KELLOGG, J. We may assume, without deciding, that under section 130 of the highway law (Laws 1890, p. 1202, c. 568), as amended by chapter 321, p. 883, of the Laws of 1902, and section 136 of the highway law, and Beckwith, Commissioner, v. Whalen, Commissioner, 65 N. Y. 322, and s. c. 70 N. Y. 430, and Huggins v. Riley, 125 N. Y. 88, 25 N. E. 993, that where a highway in each town comes to the bank of a river dividing the towns a bridge may be constructed across the river connecting such highway, by proper proceedings under section 136 of said highway law, although no bridge had existed there before.

The appellant contends that the Mohawk river is a navigable stream, and that a bridge across it cannot be established under the above provisions; that additional legislation on the part of the state, of the board of supervisors, is necessary before such action can be taken. The court will take judicial notice of the fact that by section 3, c. 147, p. 334, of the Laws of 1903, as amended by chapter 740, p. 2102, of the Laws of 1905, which was in force when this application was made, the Mohawk river from above Cohoes Falls to Little Falls is to be a part of the Erie Canal, and that such river between those points is "canalized" for the barge canal, so called, and that the place where the proposed bridge is to be constructed is across a part of the

Mohawk river which is canalized as a part of said Erie Canal. Section 115 of the canal law (chapter 338, p. 645, Laws 1894) provides that a bridge shall not be constructed across the canal without first obtaining for the model or location thereof the written consent of the superintendent of public works or of the superintendent of repairs upon that line of the canal which is intersected by the road or highway of which the bridge is a part, and section 117 provides that a town may, at its own cost, but with the consent and under the direction of the superintendent of public works, erect and maintain a bridge, where there is not a state bridge, of such kind, dimensions, and material, and with such approaches, as the superintendent approves. The state, therefore, has given its consent to the construction of bridges across the canal.

We may also take judicial notice of the fact that the barge canal, as authorized by the statute above quoted, is now actually being constructed, but it is not known at what particular point between the two towns in question it will pass, or what kind of a bridge or in what manner the bridge should cross the river when canalized; and it would seem that an investigation as to the necessity and propriety of a bridge at this time would be without profit to the towns, and that probably the superintendent of public works could not now determine in what manner or how such bridge should be constructed. It is evident that at this time no approximate estimate can be made of the probable cost and expense of such construction, and the expense may be a material fact for consideration by the court in determining the necessity and propriety of such bridge. The court will not order such bridge to be constructed until it knows the probable expense, and is able to determine whether it is an expense which the towns may fairly be called upon to bear.

I think, therefore, the Special Term should have denied the application, upon the ground that it is not practicable now to construct such a bridge, or determine the necessity or propriety of its construction, with liberty to renew the application when conditions have changed so that such questions may properly be determined. The order should therefore be reversed, and the application denied.

SMITH, P. J. (dissenting). The order appealed from simply directs a reference to ascertain the facts upon which the action of the court is to be determined. The opinion of Justice KELLOGG seems to me improperly to assume that the location of the bridge could not now be determined, and the expense approximated, and the written consent of the superintendent of public works to its construction obtained. I think the reference was properly directed to ascertain the exact situation, for the guidance of the court in any subsequent application.

Orders reversed, and application denied, with privilege to renew, as stated in opinion. All concur, except SMITH, P. J., dissenting in memorandum; COCHRANE, J., concurring in result.